**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>Legacy IMBDS, Inc., et al.,[1]<br><br>                              Debtors. | Chapter 11<br><br>Case No. 23-10852 (KBO)<br><br>(Jointly Administered) |
| Synacor, Inc.,<br><br>                              Plaintiff,<br><br>         v.<br><br>IV Media, LLC; Innovation Ventures, LLC; Portal Acquisition Co.; iMedia Brands, Inc.; ValueVision Interactive, Inc.; VVI Fulfillment Center, Inc.; ValueVision Retail Inc.; JWH Acquisition Company; PW Acquisition Company, LLC; EP Properties, LLC; FL Acquisition Company; Norwell Television, LLC; 867 Grand Avenue, LLC; and Unidentified Parties, 1-25.<br><br>                              Defendants. | Adv. No. _____ |

**COMPLAINT FOR DECLARATORY JUDGMENT**

Plaintiff Synacor, Inc. (the "Plaintiff") alleges for its complaint (the "Complaint") and claims for relief against IV Media, LLC ("IV Media"), Innovation Ventures, LLC ("IVLLC" and, together with IV Media, the "Buyer"), debtor Portal Acquisition Company ("PAC"), debtor

---

[1] The debtors in the above-captioned chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number are: ValueVision Media Acquisitions, Inc. (8670); iMedia Brands, Inc. (3770); ValueVision Interactive, Inc. (8730); Portal Acquisition Company (3403); VVI Fulfillment Center, Inc. (5552); ValueVision Retail Inc. (2155); JWH Acquisition Company (3109); PW Acquisition Company, LLC (0154); EP Properties, LLC (3951); FL Acquisition Company (3026); Norwell Television, LLC (6011); and 867 Grand Avenue, LLC (2642). The Debtors' service address is 6740 Shady Oak Road, Eden Prairie, MN 55344-3433.

iMedia Brands, Inc. ("iMedia"), debtors ValueVision Interactive, Inc., VVI Fulfillment Center, Inc., ValueVision Retail Inc., JWH Acquisition Company, PW Acquisition Company, LLC, EP Properties, LLC, FL Acquisition Company, Norwell Television, LLC, and 867 Grand Avenue, LLC (collectively, with PAC and iMedia, the "Debtors"), and Unidentified Parties 1 through 25 (who are persons unknown but who may assert an interest in or ownership of claims and property which are the subject of this Complaint) ("Unidentified Parties", together, with Buyer and Debtors, the "Defendants"), as follows:

## PRELIMINARY STATEMENT

1. In late 2020, iMedia communicated with Synacor about its desire to acquire Synacor's profitable portal and advertising business (the "Business"). After completing due diligence and negotiations with Synacor, on July 30, 2021, PAC, a special purpose entity formed by iMedia, entered into an agreement to acquire the Business for $20 million in cash and $10 million in secured note obligations. The Business PAC purchased consisted of intellectual property assets, customer and advertiser relationships, trade secrets, accounts receivable, contracts, and related assets critical to the operation of the Business (collectively, the "Synacor-Originated Assets"). PAC's debt to Synacor for the purchase of the Business was secured by a valid and fully perfected lien on the Synacor-Originated Assets and other personal property acquired by PAC after its acquisition of the Business.

2. By means that remain unclear (and appear to be undocumented) iMedia took pre-petition ownership or title to certain of the Synacor-Originated Assets from PAC. The pre-petition transfers from PAC were done without Synacor's knowledge or consent. Debtors have provided Synacor with proof of certain contract assignments demonstrating a limited conveyance of certain Synacor-Originated Assets from PAC to iMedia but have not explained the basis for

iMedia's or other Debtors' ownership of any other Synacor-Originated Assets prior to Debtors selling the Purchased Assets (defined below) to Buyer.

3.    Next, and contrary to the assurances it gave to Synacor, this Court, and its creditors, Debtors orchestrated the sale of the Business and conveyed (or allowed the use of) assets necessary for operating the Business to the Buyer. Buyer now appears to own, in part, and without legal justification to possess, in part, the Synacor-Originated Assets.

4.    As noted, some of the Synacor-Originated Assets were purchased, and now owned, by the Buyer (these assets, the "Purchased Assets"). Other Synacor-Originated Assets are now possessed by Buyer without any legal justification (these assets, the "PAC-Owned Assets"). To the extent any Synacor-Originated Assets were Purchased Assets, Synacor's lien attached to the proceeds of their sale and Synacor is entitled to receive payment for the assets. And to the extent the Synacor-Originated Assets are PAC-Owned Assets, they remain collateral for obligations PAC and iMedia owe to Synacor pursuant to Synacor's valid and fully perfected lien.

5.    Absent a true and valid transfer in ownership of these assets from PAC to iMedia, Buyer is using PAC's property—the PAC-Owned Assets—without legal basis or authority, is damaging the value of Synacor's collateral securing its lien, and is infringing upon PAC's intellectual property rights.

## JURISDICTION AND VENUE

6.    The United States Bankruptcy Court for the District of Delaware (the "Court") has subject-matter jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334(b). The claims and causes of action asserted in this Complaint arise in and relate to the above-captioned jointly administered chapter 11 cases pending in this Court.

7. The Court has personal jurisdiction over the Defendants pursuant to the nationwide service of process and personal jurisdiction provisions in Fed. R. Bankr. P. 7004(d) and (f). Defendants have submitted to this Court's jurisdiction in connection with Debtors' chapter 11 proceedings before the Court.

8. Venue in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

9. This adversary proceeding is a core proceeding to be heard and determined by the Court pursuant to 28 U.S.C. § 157(b)(2)(A), (B), (K) & (O) and the Court's Amended Standing Order of Reference dated February 29, 2012.

10. In accordance with Fed. R. Bankr. P. 7008 and Local Rule 7008-1, Plaintiff consents to entry of final orders and judgment by this Court with respect to all claims asserted by Plaintiff in this adversary proceeding.

**PARTIES**

11. Synacor is a Delaware corporation with a principal place of business in Buffalo, New York. Synacor is a cloud-based software and service provider for leading global video, content, entertainment, internet and communications providers, device manufacturers, governments, and enterprises.

12. IV Media is a Michigan limited liability company with an address in Farmington Hills, Michigan.

13. IVLLC is a Michigan limited liability company with an address in Farmington Hills, Michigan.

14. iMedia is a Minnesota corporation which, at all relevant times, maintained offices in Eden Prairie, Minnesota.

15. PAC is a Minnesota corporation which, at all relevant times, maintained offices in Eden Prairie, Minnesota.

4

## BACKGROUND

**A.     PAC, not iMedia, Purchases the Business from Synacor.**

16.     As of July of 2021, Synacor owned and operated the Business.

17.     On or about June 16, 2021, Timothy Peterman, the chief executive officer of iMedia, wrote to Himesh Bhise, the CEO of Synacor at the time, to present a non-binding expression of iMedia's intention "to acquire 100% of Synacor's Portal and Advertising business segment" for $30 million. iMedia's purchase was to be financed by iMedia's "existing cash and available lending capacity" without requiring new financing, other than "a $15 million seller's note" secured by the sold assets.

18.     iMedia proposed to repay the note in three years with amortizing quarterly payments of principal with 6% interest ("LOI"). In the LOI, iMedia proposed a 30-day exclusive diligence period to negotiate and close an asset purchase agreement. Synacor accepted iMedia's LOI by countersigning on June 18, 2020. A true and accurate copy of the LOI is attached to the Complaint as Exhibit 1.

19.     On information and belief, during all times relevant to the transaction contemplated by the LOI, iMedia management and leadership was represented and advised by qualified and sophisticated lawyers, accountants, investment bankers, and other professionals.

20.     For purposes of the acquisition, iMedia formed its special purpose entity, PAC, to take title to and possession of various assets from Synacor as described in the *Asset Purchase Agreement by and Among iMedia Brands, Inc., Portal Acquisition Company, and Synacor, Inc.*, dated as of July 30, 2021 (the "Synacor/PAC APA") and related transaction documents and instruments including the Note (as defined below) (collectively, the "Purchase Contract").

21. The Purchase Contract contemplated PAC's ownership of, among other things: (a) "Acquired Intellectual Property" consisting of "all Proprietary Rights Related to the Business, including those set forth on Schedule 2.1(a)(vi), but excluding the Licensed Patents and Shared Code Assets[;]" and (b) "all the rights and benefits of the portions of the Straddle Contracts" related to the Business. These "Straddle Contracts" consisted of certain of Synacor's customer contracts that bundled services rendered by the Business with services furnished by other Synacor business units.

22. A signed copy of the Synacor/PAC APA (without exhibits or schedules) is annexed to the Complaint as Exhibit 2. A limited version of the disclosure schedules to the Synacor/PAC APA is attached to this Complaint as Exhibit 3.[2]

23. Pursuant to the Purchase Contract, PAC acquired the Synacor-Originated Assets from Synacor for $30 million, with $20 million paid to Synacor at closing of the Synacor/PAC APA and $10 million payable in installments pursuant to a *Secured Promissory Note* (the "Note"). A copy of the Note is attached to this Complaint as Exhibit 4. PAC also assumed certain liabilities associated with the Business in the amount of $7.253 million.

24. PAC and Synacor agreed to apportion certain rights and responsibilities of the Straddle Contracts pursuant to the Purchase Contract. In pertinent part, PAC "…acknowledges and agrees that [PAC] is liable for, and will bear, and will fully indemnify [Synacor] and its Affiliates from any and all Liabilities arising under or related to the Straddle Contracts to the extent relating to the post-Closing operation of the Business or to the extent caused by any act or omission of [PAC], its Affiliates, or any of their subcontractors or representatives, in each case,

---

[2] For purposes of Exhibit 3, Synacor is only including Schedule 2.5(a) & (b) of the disclosure schedules.

to the extent attributable to actions or omissions first occurring from and after the Closing…" Exhibit 4 at Schedule 2.5(b).

25. PAC's obligations to Synacor were secured with a lien on substantially all of PAC's assets, which, at the time of the closing of the Synacor/PAC APA, consisted entirely of Synacor-Originated Assets and their related proceeds (collectively, the "Collateral"). A copy of the pertinent UCC-1 financing statement evidencing Synacor's perfected security interest in the Collateral is attached to this Complaint as Exhibit 5.

26. The Purchase Contract was the result of good faith, arms-length negotiations between a willing seller (Synacor) and willing buyer (PAC and iMedia) with significant due diligence conducted by PAC and iMedia ahead of time. Neither PAC nor iMedia was under compulsion to buy, nor was Synacor under a compulsion to sell, the Synacor-Originated Assets.

27. To be sure, PAC and iMedia: (i) had the experience and competence necessary to become reasonably informed about the Synacor-Originated Assets; (ii) were advised by qualified professionals who diligently investigated Synacor's actual and projected financial data to understand all business risks of purchasing the Business; (iii) contemporaneously determined their own value for the Synacor-Originated Assets using appropriate valuation techniques, including net asset valuation, comparable trading multiples, and comparable M&A transactions; (iv) performed stress case analyses incorporating appropriate downside risking; and (v) closed the deal at a time when they were and remained solvent with sufficient liquidity to operate the Business.

28. Synacor had specific business purposes for requiring iMedia to be party to the Purchase Contract, namely to: (i) provide credit support to PAC's purchase through its unconditional guaranty of the Note; (ii) provide representations and warranties satisfactory to

Synacor with respect to the transaction—including PAC's and iMedia's solvency after the transaction; and (iii) limit iMedia's right to compete with or recruit employees from Synacor's remaining business.

29. PAC never sought Synacor's consent prior to transferring any of the Synacor-Originated Assets to iMedia (or any other party), and Synacor never released its lien on any of the Synacor-Originated Assets.

## B. After Closing the Purchase Contract, the Debtors' Businesses Experience Synergies and Revenue Increases.

30. Through a series of acquisitions in 2021, including PAC's acquisition of the Business through the Purchase Contract, the Debtors, together with their non-debtor direct and indirect subsidiaries, (collectively, the "Company") owned a global portfolio of entertainment, consumer brands and media commerce services businesses. Debtors cross-promoted each other's services and exchanged data with one another in the hopes of optimizing the engagement experiences created for advertisers and consumers.

31. With the Synacor-Originated Assets in the hands of PAC, the Company operated and reported three operating business segments: (i) entertainment (*i.e.*, shopping television networks); (ii) consumer brands (*i.e.*, apparel, accessories, and other consumer goods brands and online marketplaces); and (iii) media commerce services (*i.e.*, digital advertising and e-commerce solutions), which, as late as May 2023, the Company touted as the "Advertising Arm" of the Company's other business segments.

32. As of May 2023, the Company showed EBITA, adjusted for one-time expenses associated with the transaction, of over $3.1 million in 2021 and $6.5 million in 2022 with respect to the Business. The Company's materials boasted that the Business exceeded the net aggregate earnings of the other iMedia business segments. On information and belief, from the

closing of the Synacor/PAC APA to May 2023, the Business was generating net revenues that reduced the impact of financial losses suffered elsewhere in the Company. For example, iMedia's January 29, 2022 10-K SEC filing indicates, "Media commerce services net sales increased $21,278[,000] or 324.2% and $3,185[,000] or 94.3% for fiscal 2021 and 2020, respectively, when compared to the previous fiscal year. *For 2021, the increase in net sales was primarily due to the acquisition of iMDS (Synacor acquisition), which contributed approximately 79% to sales for fiscal 2021*."[3]

33. Similarly, iMedia's October 29, 2022, Form 10-Q indicates, "Consolidated gross profit for the first nine months of fiscal 2022 was $161,260, an increase of $12,846,[000,] or 8.7%, compared to the first nine months of fiscal 2021 . . . The Media Commerce Services segment's gross profit increased by $5,338[,000], or 113.8% compared to the first nine months of fiscal 2021 and was primarily driven by the July 2021 acquisition of iMDS."[4]

**C.    PAC Transfers Certain Assets to iMedia.**

34. On information and belief, prior to the Petition Date, PAC transferred certain Synacor-Originated Assets to iMedia and/or other Debtors that facilitated Debtors cherry-picking the Synacor-Originated Assets they wanted: lucrative contracts and beneficial relationships—while passing over underperforming contracts and assets, leaving those (and substantial liabilities) with PAC.

**D.    Debtors File Chapter 11, Sell Certain Synacor-Originated Assets, and Authorize the Use of Other, Unsold Synacor-Originated Assets**

35. On June 28, 2023 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

---

[3] The iMedia SEC January 29, 2022 10-K filing can be accessed here. iMedia SEC January 29, 2022 10-K at 32 (emphasis added).

[4] The iMedia SEC October 29, 2022 10-Q filing can be accessed here. iMedia SEC October 29, 2022 10-Q at 40.

36. As of the Petition Date, the unpaid principal balance due on the Note was approximately $4 million.

37. As of the Petition Date, PAC's obligations to Synacor were secured by valid, binding, and properly and timely perfected security interests granted by PAC in the Collateral.

38. On August 15, 2023, the Court entered its *Final Order (I) Authorizing the Debtors to (A) Obtain Post-Petition Financing, (B) Grant Liens and Superpriority Administrative Expense Claims to Post-Petition Lenders and (C) Utilize Cash Collateral, (II) Providing Adequate Protection to Pre-Petition Secured Parties, (III) Modifying the Automatic Stay Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364, 506, 607 and 552* (the "Final DIP Order") (Dkt. No. 454).

39. Under the terms of the Final DIP Order, Debtors are obligated to "segregate the proceeds received by the Debtors on account of customer receipts generated by Portal [PAC] up to an aggregate amount of $40,000 per week" (the "Synacor Adequate Protection Proceeds"). *See Final DIP Order*, § IV.B(i). On information and belief, the Debtors have segregated approximately $320,000 in Synacor Adequate Protection Proceeds since the Petition Date.

40. The segregation of the Synacor Adequate Protection Proceeds was required as part of the adequate protection provided to Synacor for its interests in the Collateral and to compensate Synacor for any "diminution in value of [its] interests in . . . [PAC's] interest in the [Collateral] . . . resulting from the . . . use, sale, lease, decrease, or depreciation or other diminution in value of the . . . [Collateral]." *Final DIP Order*, § H.2.

41. On August 16, 2023, each of the Debtors—except for PAC—sold substantially all of their assets to the Buyer pursuant to the Court's *Order (I) Authorizing the Sale of Substantially All of the Debtors' Assets Free and Clear of All Encumbrances Other Than Assumed Liabilities;*

*(II) Approving the Debtors' Entry Into the Asset Purchase Agreement; (III) Authorizing Assumption and Assignment of Certain Executory Contracts and Unexpired Leases; and (IV) Granting Related Relief* [Docket No. 461] entered August 15, 2023 (the "Sale Order").

42. This Court's Sale Order approved the Debtors' execution and performance of an *Asset and Equity Purchase Agreement by and among IV Media, LLC, as Buyer, Innovation Ventures, LLC as Buyer Guarantor and the Other Sellers Named Herein, as Sellers* dated August 15, 2023 (the "AEPA"). PAC is not a party to the AEPA. *See Sale Order*, fn. 2.

43. Included on Exhibit 2 to the Sale Order were eighteen customer and vendor contracts that are, on information and belief, Synacor-Originated Assets. In the disclosures associated with these contracts, in each instance, Debtors list iMedia, and not PAC, as the debtor counterparty to the applicable contract. The same is true of Debtors' contract assumption notices filed on July 11, 2023, and August 3, 2023. (*See* Dkt. Nos. 132 and 352.) And the AEPA references additional disclosure schedules that were neither filed nor shared with Synacor. These schedules may identify other Synacor-Originated Assets that purportedly became Purchased Assets upon transfer to Buyer.

**E.     Synacor's Lien on the Sale Proceeds and PAC Assets Remains Valid, Enforceable, and Unsatisfied.**

44. On information and belief, iMedia provided diligence materials to Buyer evidencing that: (a) the Synacor-Originated Assets were essential for operation of the Business; (b) PAC was, as of the Petition Date, the true owner of many of the Synacor-Originated Assets, and (c) Synacor held a valid and perfected lien on all the Synacor-Originated Assets and that lien had not been satisfied or released.

45. On information and belief, the fair-market value of and consideration received by the Debtors for the Purchased Assets were equal to or greater than the value of the presently

11

outstanding obligations due to Synacor under the Note. As of the date of the filing of this Complaint, Synacor estimates the Note obligation to be no less than $4.5 million, plus interest and attorney fees that accrue hereafter.

46. On information and belief, the net proceeds of the AEPA, after repayment of the senior secured debt and other costs of closing (the "Sale Proceeds") exceed $4.5 million. Yet neither PAC nor Buyer has paid Synacor anything to discharge Synacor's lien on the Purchased Assets.

47. After the closing of the AEPA, Buyer has publicly held itself out to be the owner and operator of the Business.

48. Indeed, Buyer has approached Synacor about revenue sharing and the Straddle Contracts that Synacor sold to PAC under the Purchase Contract, evidencing the Buyer's (incorrect) belief that the rights to Straddle Contract revenue sharing under the Purchase Contract had been assumed and assigned to the Buyer.

49. Nonetheless, as of the date of the filing of this Complaint, neither PAC nor iMedia have sought to assume (or assume and assign) the Purchase Contract.

50. Buyer now has possession of the bulk of the profitable Synacor-Originated Assets.

51. On August 19, 2023, Synacor's counsel sent Debtors' counsel a demand that Debtors segregate no less than $4.5 million from the Sale Proceeds to satisfy the obligations secured by Synacor's lien on the Purchased Assets until such time as the value of Synacor's lien on the Sale Proceeds is determined and, upon such determination, paid to Synacor.

52. On August 25, 2023, Debtors, through counsel, responded, disputing the necessity of segregating any sale proceeds, suggesting all such funds ought to be available to the Debtors' unsecured creditors.

53. On information and belief, Buyer disputes that any assets in Buyer's possession relating to the Business are assets of PAC.

54. Debtors' division and partial disposition of the Synacor-Originated Assets has damaged and diminished the value of the PAC-Owned Assets that constitute Collateral for the Note obligation.

55. Buyer's use of the PAC-Owned Assets without payment to PAC or Synacor, the imposition of the automatic stay, and the Debtors' other actions with respect to the Collateral has damaged and diminished the value of the Collateral.

56. Synacor is entitled to reimbursement for the diminution in the value of the Collateral.

## FIRST CLAIM FOR RELIEF – DECLARATORY JUDGMENT REGARDING PAC-OWNED ASSETS

57. Synacor incorporates each preceding paragraph into this paragraph as if fully written herein.

58. The dispute among Synacor, Buyer, and Debtors with respect to the ownership and use of the PAC-Owned Assets presents an actual controversy among the parties within this Court's jurisdiction.

59. The Unidentified Parties have or may claim to have an interest in the PAC-Owned Assets. Synacor disputes that any such interests are senior to Synacor's.

60.  Synacor is entitled to a judicial determination of the extent of its interest in the PAC-Owned Assets, including the validity, priority, and extent of its security interest in the PAC-Owned Assets.

61.  Pursuant to 28 U.S.C. § 2201, Synacor is entitled to a judgment declaring the extent and priority of its lien in the PAC-Owned Assets and awarding related relief.

WHEREFORE, Synacor respectfully requests that the Court enter declaratory judgment in its favor and against Defendants on its First Claim for Relief, determining that: (a) Synacor held, as of the Petition Date, and has continued to hold since that time, a valid, fully-enforceable, and properly perfected lien in the PAC-Owned Assets; (b) Synacor's interest in the PAC-Owned Assets is superior to that of the other existing creditors of any of the Debtors or their estates; and (c) the Buyer holds no interest in the PAC-Owned Assets, and, until repayment of the obligations due Synacor, Buyer has (and shall have) no right to use, dispose, encumber, lease, or sell any of the PAC-Owned Assets.

## SECOND CLAIM FOR RELIEF – DECLARATORY JUDGMENT
## AEPA SALE PROCEEDS

62.  Synacor incorporates each preceding paragraph into this paragraph as if fully written herein.

63.  The dispute among Synacor and Debtors with respect to Synacor's entitlement to or lien upon the Sale Proceeds (up to the amount of the obligations due Synacor) presents an actual controversy among the parties within this Court's jurisdiction.

64.  The Unidentified Parties have or may claim to have an interest in the Sale Proceeds senior to that of Synacor. Synacor disputes that there are any unpaid senior interests in the Sale Proceeds that would entitle any party to payment before Synacor on account of its lien on the Synacor-Originated Assets sold to the Buyer under the AEPA.

65. Synacor is entitled to a judicial determination of its interest in the Sale Proceeds including the validity, priority, and extent of its security interest in the Sale Proceeds.

66. Pursuant to 28 U.S.C. § 2201, Synacor is entitled to a judgment declaring the extent and priority of its lien in the Sale Proceeds and awarding related relief.

WHEREFORE, Synacor respectfully requests that the Court enter declaratory judgment in its favor and against Defendants on its Second Claim for Relief, determining that: (a) Synacor held, as of the Petition Date, a valid, fully-enforceable, and properly perfected lien in the Synacor-Originated Assets; (b) Synacor's interest in the Sale Proceeds is superior to that of the other creditors of any of the Debtors; (c) the value of Synacor's interest in the Sale Proceeds is equal to the fair market value of the Synacor-Originated Assets transferred to Buyer up to the amount of the balance due Synacor under the Purchase Contract; and (d) Debtors must segregate no less than $4.5 million from Sale Proceeds to satisfy Synacor's lien on the assets Debtors sold to Buyer until such time as the value of Synacor's lien on the proceeds of the AEPA is determined and, upon such determination, paid to Synacor.

### THIRD CLAIM FOR RELIEF – DECLARATORY JUDGMENT
### CASH COLLATERAL

67. Synacor incorporates each preceding paragraph into this paragraph as if fully written herein.

68. The Synacor Adequate Protection Proceeds are Cash Collateral of Synacor and Synacor holds a valid, properly perfected first and best lien on the Synacor Adequate Protection Proceeds.

69. The Synacor Adequate Protection Proceeds are available to compensate Synacor for the diminution in the value of its Collateral.

70. On information and belief, the Collateral has diminished in value since the Petition Date due, at least in part, to (i) the division of the Synacor-Originated Assets during the sale process; (ii) the imposition of the automatic stay; and (iii) other conduct or events causing diminution in the Collateral's value.

71. The Synacor Adequate Protection Proceeds are available to compensate Synacor for the type of diminution in the value of the Collateral that has occurred here. Consequently, absent repayment in full of the obligations due Synacor, Synacor is entitled to payment of the Synacor Adequate Protection Proceeds.

72. Debtors and/or Unidentified Parties claim or may claim to have an interest in the Synacor Adequate Protection Proceeds and/or dispute Synacor's lien upon or entitlement to the Synacor Adequate Protection Proceeds.

73. The foregoing presents an actual controversy among the parties within this Court's jurisdiction.

74. Pursuant to 28 U.S.C. § 2201, Synacor is entitled to a judgment declaring the extent and priority of its lien on the Synacor Adequate Protection Proceeds and awarding related relief.

WHEREFORE, Synacor respectfully requests that the Court enter declaratory judgment in its favor and against Defendants on its Third Claim for Relief declaring that (a) Synacor holds a valid, properly perfected first and best security interest in and lien on the Synacor Adequate Protection Proceeds; and (b) Synacor is entitled to payment of the Synacor Adequate Protection Proceeds until the obligations of iMedia and PAC to Synacor are satisfied in full.

### FOURTH CLAIM FOR RELIEF – DECLARATORY JUDGMENT
### SETOFF AND RECOUPMENT

75. Synacor incorporates each preceding paragraph into this paragraph as if fully written herein.

76. The Purchase Contract contemplated certain allocations of responsibility for the servicing of mutual customers. Until new agreements with customers could be implemented, PAC was to provide portal and advertising services to Synacor's customers under the Purchase Contract; likewise, Synacor was to provide webmail and cloud ID management services (where applicable) to PAC's nominal customers.

77. Since the closing of the AEPA, Synacor has received demands from the Buyer, on one hand, and PAC, on the other hand, for amounts allegedly owed by Synacor under the Purchase Contract including with respect to the Straddle Contracts (collectively, the "<u>Customer Revenue</u>").

78. The entitlements to Customer Revenue are determined by reference to the Purchase Contract.

79. Where the parties execute several related agreements with the apparent intention that the agreements govern a single transaction collectively, the agreements should be construed as an integrated single whole even if they are executed at different times. *See e.g., Huron Consulting Servs., LLC v. Physiotherapy Holdings, Inc. (In re Physiotherapy Holdings, Inc.),* 538 B.R. 225, 234 (Dist. Del. 2015) (holding that separate agreements can still form a single contract even if certain provisions between them conflict).

80. Synacor is entitled to set off and/or recoupment of any sums due to it under the Purchase Contract against sums it may owe. Under the Purchase Contract, Synacor is owed amounts substantially more than it owes any party with respect to the provision of services to mutual customers or payment of Customer Revenue.

81. Synacor is entitled to a determination of the amounts owed under the Purchase Contract by various parties and the extent of Synacor's rights of recoupment and setoff under the Purchase Contract.

82. Synacor is entitled to retain all Customer Revenue as a recoupment for and/or setoff of the sums due Synacor pursuant the Purchase Contract.

83. On information and belief, one or more of the Debtors, Buyer, and/or Unidentified Parties 1-25 claim or may claim an interest in some or all of the Customer Revenue. Although no such interest is senior to that of Synacor, a dispute has arisen concerning the relative entitlements to Customer Revenue and the right of recoupment and set off applicable thereto.

84. The foregoing presents an actual controversy among the parties within this Court's jurisdiction.

85. Pursuant to 28 U.S.C. § 2201, Synacor is entitled to a judgment declaring the extent and priority of its interest in and/or lien upon the Customer Revenue and awarding related relief.

WHEREFORE, Synacor respectfully requests that the Court enter declaratory judgment in its favor and against Defendants on its Fourth Claim for Relief declaring that (a) Synacor holds a valid, properly perfected first and best security interest in and lien on Customer Revenue and/or a right to fully setoff and recoup all sums it is owed against such revenues; and (b) Synacor is entitled to receive, retain, and apply to the obligations owed to Synacor all Customer Revenue ostensibly payable under the Purchase Contract until the obligations owed to Synacor under the Purchase Contract are satisfied in full.

Dated: November 1, 2023
Wilmington, Delaware

*/s/ Christopher Viceconte*
Christopher Viceconte (No. 5568)
Chantelle D. McClamb (No. 5978)
GIBBONS P.C.
300 Delaware Avenue, Suite 1015
Wilmington, Delaware 19801-1671
(302) 518-6300
cviceconte@gibbonslaw.com
cmcclamb@gibbonslaw.com

and

THOMPSON HINE LLP

Curtis L. Tuggle, Esq.
Jonathan S. Hawkins, Esq.
3900 Key Center
127 Public Square
Cleveland, Ohio 44144
(216) 566-5500
curtis.tuggle@thompsonhine.com
jonathan.hawkins@thompsonhine.com

and

Ryan Blackney, Esq.
20 N. Clark, Ste. 3200
Chicago, IL 60602
(312) 998-4283
rblackney@thompsonhine.com

*Attorneys for Synacor, Inc.*